J-S71016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.F.C., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.C., FATHER | : : : : : : : | |
| | : | No. 2420 EDA 2019 |

Appeal from the Order Entered June 4, 2019
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000293-2019,
FID: 51-FN-002639-2014

BEFORE:  BOWES, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY MURRAY, J.:                    **Filed January 30, 2020**

R.C. (Father) appeals from the decree involuntarily terminating his parental rights to his daughter, A.F.C., born in January of 2018.[1]  Upon careful review, we affirm.

On April 18, 2019, when A.F.C. was 15 months old, the Philadelphia Department of Human Services ("DHS") filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b).  A hearing occurred on June 4, 2019, during which A.F.C. was represented by the Child Advocate, Frances Odza, Esquire.  Father was represented by counsel during the hearing; however, Father did not appear,

---

[1] The court involuntarily terminated the parental rights of M.B. (Mother) by separate decree entered on June 4, 2019; Mother did not file a notice of appeal.

and his counsel did not present any evidence on his behalf. DHS presented the testimony of one witness, Carolyn Smith, the Community Umbrella Agency (CUA) caseworker, who testified to the following facts.

A.F.C. was born with methadone in her system, and as a result, was placed in foster care when she was two weeks old. N.T., 6/4/19, at 8. On March 22, 2018, the trial court adjudicated A.F.C. dependent. By separate order dated March 22, 2018, the court issued an aggravated circumstances order as to Father and Mother due to the involuntary termination of their parental rights to another child.[2]

Father was present for A.F.C.'s adjudication, but he was subsequently arrested on a bench warrant for drug-related crimes. *Id.* at 10; DHS Exhibit 3. DHS established single case plan objectives for Father including participating in services for drug and alcohol addiction, mental health, housing, and employment. *Id.* at 11. Ms. Smith testified that she tried to see Father in prison, but the case manager never returned her telephone call. *Id.* at 10. Ms. Smith also testified that Father had her contact information, but she did not hear from him. *Id.* at 10-11.

At the time of the termination proceeding, Father was no longer incarcerated, but his whereabouts were unknown to DHS. There is no record

---

[2] The record reveals that Father's and Mother's parental rights to that child were terminated in September of 2016.

- 2 -

evidence indicating when he was released from prison. Ms. Smith testified that Father has not seen A.F.C. since her birth. *Id.* at 11.

By decree dated and entered June 4, 2019, the court involuntarily terminated Father's parental rights. On July 22, 2019, Father's counsel filed a petition for leave to file an appeal *nunc pro tunc*. By order dated August 2, 2019, and entered on August 8, 2019, the trial court granted Father's petition and directed him to file an appeal within 30 days. On August 22, 2019, Father filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b).

On appeal, Father presents the following issues for our review:

1. Whether the [t]rial [c]ourt erred in [t]erminating [Father]'s [p]arental [r]ights under 23 Pa.C.S.A. [§] 2511(a)(1), the evidence having been insufficient to establish Father had evidenced a settled purpose of relinquishing parental claim, or having refused or failed to perform parental duties[?]

2. Whether the [t]rial [c]ourt erred in [t]erminating [Father]'s [p]arental [r]ights under 23 Pa.C.S.A. [§] 2511(b)[?]

Father's Brief at 5.

We review Father's issues for an abuse of discretion. Our Supreme Court has explained:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest

- 3 -

unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Instantly, the trial court terminated Father's parental rights pursuant to Section 2511(a)(1) and (b), which provides:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

. . .

23 Pa.C.S.A. § 2511(a)(1), (b).

With respect to Section 2511(a)(1), our Supreme Court has held:

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988). Further,

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re N.M.B.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

Our courts have explained that parental duty "is best understood in relation to the needs of a child." *In re Burns*, 379 A.2d 535, 540 (Pa. 1977).

A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life.'

*Id.* (citations omitted); *see also In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003).

In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court discussed *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975), a case where the Court considered the termination of parental rights of incarcerated persons involving abandonment, which is currently codified at Section 2511(a)(1). The *S.P.* Court stated:

Applying in *McCray* to the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." *Id.* at 655. We observed that the father's incarceration made his performance of this duty "more difficult." *Id.*

*In re Adoption of S.P.*, 47 A.3d at 828. The Court continued:

[A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. *Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child.* Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

[**McCray**] at 655 (footnotes and internal quotation marks omitted). . . .

**Id.** (emphasis added).

With respect to Section 2511(b), this Court has stated, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." **Id.** (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." **In re K.Z.S.**, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

Father argues that DHS did not satisfy its burden of proving that he had a settled purpose of relinquishing his parental rights under Section 2511(a)(1). Specifically, Father asserts the record is devoid of evidence "regarding the length of [his] prison term and as to exactly when [he] had been released. Moreover, [Ms. Smith] had described only having made one attempt as far as contacting the prison without any further efforts subsequent to not hearing back." Father's Brief at 11.

Father's argument is deficient because it is premised on the assumption that Father's conduct must exhibit both a settled purpose of relinquishing his

parental claim to A.F.C. and the failure to perform his parental duties. Rather, it is well-settled that parental rights may be terminated pursuant to Section 2511(a)(1) "if the parent *either* demonstrates a settled purpose of relinquishing parental claim to a child *or* fails to perform parental duties." **In re C.M.S.**, 832 A.2d at 462 (emphasis added).

In this case, the evidence clearly and convincingly establishes that Father failed to perform his parental duties during A.F.C.'s 15 months of life. During his incarceration and after his release, Father had an affirmative duty to show interest in A.F.C. and associate with her. Father failed to do so. Therefore, we discern no abuse of discretion by the court in terminating Father's parental rights pursuant to Section 2511(a)(1).

With respect to Section 2511(b), Father broadly asserts that the evidence failed to establish that termination was in A.F.C.'s best interest. We disagree.

We have explained:

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

**In re A.S.**, 11 A.3d 473, 483 (Pa. Super. 2010).

Our Supreme Court has stated, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-

adoptive home and whether they have a bond with their foster parents." ***In re T.S.M.***, 71 A.3d at 268. The Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." ***Id.*** at 269. The ***T.S.M.*** Court opined, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." ***Id.***

Here, there is no evidence that Father and A.F.C. share a parent-child bond. Therefore, it was reasonable for the trial court to infer that none exists. ***See In re K.Z.S.***, 946 A.2d at 762-763. Ms. Smith, who visits A.F.C. in her foster home, testified that A.F.C. has resided with the same foster parents since placement, and they share a parent-child bond. N.T., 6/4/19, at 13. A.F.C.'s foster parents, who desire to adopt her, meet her special needs, which include speech and walking issues. ***Id.*** at 12. Ms. Smith testified that A.F.C. will suffer no harm if Father's parental rights are terminated. ***Id.*** at 13-14.

In sum, we discern no abuse of discretion by the trial court relative to Section 2511(b), where clear and convincing evidence demonstrates that A.F.C.'s developmental, physical, and emotional needs and welfare are served by the involuntarily termination of Father's parental rights. Accordingly, we affirm the decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/30/2020